UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-20576-CIV-SCOLA/OTAZO-REYES

ABNER MONZON,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

      Defendant.
_____ /

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiff Abner Monzon's ("Claimant")
Motion for Summary Judgment (hereafter, "Claimant's Motion for Summary Judgment") [D.E.
20] and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security's
("Commissioner") Motion for Summary Judgment and Response to Claimant's Motion for
Summary Judgment (hereafter, "Commissioner's Motion for Summary Judgment") [D.E. 21].
The administrative transcript (hereafter, "TR.") has been filed [D.E. 18].[1]  For the reasons stated
below, the undersigned respectfully recommends that Claimant's Motion for Summary Judgment
be GRANTED, the Commissioner's Motion for Summary Judgment be DENIED, and the
Commissioner's decision be REMANDED to the Commissioner for further proceedings in
accordance with this Report and Recommendation.

## PROCEDURAL HISTORY

Claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI") on January 31, 2013, alleging a disability onset date of December 1,

_____

[1] The references hereafter (TR. __) are to the transcript pages rather than the court record pages.

2011. TR. 32. The applications were denied initially and upon reconsideration. Id. Pursuant to a written request, a hearing was held on May 26, 2015 before Administrative Law Judge Lornette Reynolds ("ALJ Reynolds"), which was continued to allow Medical Expert Haddon Alexander III, M.D. ("ME Alexander") to review recently filed evidence. Id. at 90-111. On the same date, Claimant amended his alleged disability onset date to August 1, 2013. Id. at 358. A continued hearing was held on July 7, 2015 before ALJ Reynolds, at which Claimant, ME Alexander and Vocational Expert Nicholas Fidanza ("VE Fidanza") testified. Id. at 50-89. On November 18, 2015, ALJ Reynolds issued an Unfavorable Decision, finding the following:

(1) Claimant met the insured status requirements of the Social Security Act through December 31, 2015. Id. at 34.

(2) Claimant had not engaged in substantial gainful activity since August 1, 2013, the alleged disability onset date (20 C.F.R. §§ 404.1571 et seq. and 416.971 et seq.). Id.

(3) Claimant had the following severe impairments:  history of congestive heart failure ("CHF"), coronary artery disease and/or cardiomyopathy, hypertension, osteoarthritis, rheumatoid arthritis and/or fibromyalgia, and depressive disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)). Id.

(4) Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Id. at 36.[2]

(5) Claimant had the residual functional capacity (hereafter, "RFC") to perform sedentary work, subject to certain limitations. Id. at 37.[3]

---

[2] The Social Security Administration's ("SSA") Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) and 416.925(a).

[3] The RFC is the ability of a claimant to do physical and mental work activities on a sustained basis, despite the claimant's limitations or impairments. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). The RFC must be determined based on all of the claimant's impairments, even those that are not considered "severe." See 20 C.F.R. §§ 404.1520, 404.1545, 416.920 and 416.945.

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

(6) Claimant was unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965). Id. at 41.[4]

(7) Claimant was born on September 26, 1970 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963). Id.

(8) Claimant had at least a high school education and was able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964). Id. at 42.

(9) Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Claimant was "not disabled," whether or not Claimant had transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). Id.[5]

(10) Considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Id.

(11) Claimant had not been under a disability, as defined in the Social Security Act, from August 1, 2013, through the date of the Unfavorable Decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)). Id. at 43.

On January 12, 2017, the Appeals Council denied a request for review of ALJ Reynolds' Unfavorable Decision. Id. at 1-8. On February 14, 2017, pursuant to 42 U.S.C. § 405(g), Claimant filed this action seeking reversal of ALJ Reynolds' final administrative decision [D.E. 1].

In support of his contention that ALJ Reynolds' Unfavorable Decision should be reversed, Claimant argues that ALJ Reynolds' findings with regard to his mental RFC were not supported by substantial evidence. The undersigned finds merit in this contention.

---

[4] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1) and 416.960(b)(1).

[5] SSRs are a series of precedential decisions relating to the programs administrated by the SSA and are published under the authority of the Commissioner of Social Security. See http://ssa.gov/regulations/def-ssr.htm.

## RELEVANT MEDICAL EVIDENCE

### I. Treating sources

#### A. Miami Behavioral Health Center and Spectrum Programs ("Miami Behavioral Health")

On August 2, 2013, Claimant underwent a psychiatric evaluation at Miami Behavioral Health. Id. at 1087-91. Upon mental status examination, Claimant's affect was blunted; his mood was depressed and anxious; he was oriented to time, place, and person; his recent and immediate memory was impaired; his insight and judgment were fair; his sleep was poor; his thought process was racing; his thought content was paranoid; and he had auditory hallucinations and paranoid delusions. Id. at 1089. Claimant was diagnosed with schizoaffective disorder, bipolar type and assigned a Global Assessment of Functioning ("GAF") score of 47. Id. at 1090.[6]

On May 11, 2015, Sandra Fujita, Advanced Registered Nurse Practitioner ("ARNP Fujita") and Manuela Georgescu, M.D. ("Dr. Georgescu") completed a Medical Assessment of Ability to Do Work Related Activities (Mental) for Claimant (hereafter, "Medical Source Statement"). Id. at 1078-81. ARNP Fujita and Dr. Georgescu reported that Claimant had been treated at Miami Behavioral Health since July 8, 2013. Id. at 1080. ARNP Fujita and Dr. Georgescu opined that Claimant had "poor" or no ability to do the following: follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stress; function independently; maintain attention and concentration; understand, remember and carry out simple, detailed, and complex job instructions; maintain personal appearance;

---

[6] "The Global Assessment of Functioning, or GAF scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults." See McCloud v. Barnhart, 166 F. App'x 410, 413 n.2 (11th Cir. 2006); DSM-III-R Axis V: Global Assessment of Functioning Scale (GAF), available at http://macarthur.virginia.edu/Data/Pdf/gaf.pdf.

A GAF score of 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." DSM-III-R Axis V: Global Assessment of Functioning Scale.

behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability.  Id. at 1078-79.  ARNP Fujita and Dr. Georgescu opined that Claimant suffered from a schizophrenic, paranoid or other psychotic disorder, but did not suffer from an affective disorder or a substance addiction disorder.  Id. at 1081.  ARNP Fujita and Dr. Georgescu noted that Claimant's impairment affected all activities of life.  Id. at 1080.

On May 13, 2015, ARNP Fujita reported that Claimant's appearance was appropriate; his affect was constricted; his mood was depressed and anxious; he was oriented to time, place and person; he was alert; his immediate and recent memory was impaired; his speech was unremarkable; his sleep, appetite, eye contact, reliability, concentration, insight, and judgment were fair; his thought process was psychotic; his thought content had obsessions; he had auditory hallucinations and paranoid and religious delusions; but he was not suicidal or homicidal.  Id. at 1085.  ARNP Fujita reported that Claimant was not improving with treatment as expected, and that a change in medication was needed.  Id. at 1086.

### B.  Enrique Pelayo, M.D., P.A. ("Dr. Pelayo")

Claimant received treatment from Dr. Pelayo from July 1, 2013 to May 5, 2014.  Id. at 983-1047.  On November 21, 2013, Claimant visited Dr. Pelayo for lab work for medical clearance for an umbilical hernia repair.  Id. at 991.  Claimant reported that he felt fine and that he had no chest pain or shortness of breath.  Id.  On February 27, 2014, Claimant reported that his joint pain felt better, his hypertension was controlled, his mood was better, and that his psychiatrist had increased the dosage of his medication.  Id. at 983.

### C.  Rosie Lee Wesley Health Center, Jackson Health System ("Wesley Health")

On March 4, 2015, Claimant presented as a new patient at Wesley Health to establish care and obtain medication refills.  Id. at 1139.  Claimant reported that he was no longer taking

antidepressants. Id. On April 10, 2015, Claimant visited Wesley Health for the flu and reported that he was being seen by a psychiatrist, and that he had received psychiatric medication at the psychiatrist's office. Id. at 1131.

### D. Community Health of South Florida, Inc. ("Community Health")

On May 28, 2013, Claimant visited Community Health for a biopsychosocial assessment. Id. at 916-925.   Claimant reported exacerbation of depressive symptoms, impaired daily functioning, lack of motivation, multiple health stressors, physical pain limitations, unemployment, limited resources, impaired sleep patterns, daily crying spells, isolation, alienation, increased anhedonia, hopelessness and helplessness; and denied suicidal or homicidal ideations. Id. at 924.   Claimant also stated that he was not interested in case management or psychotherapy at the time.   Id. Claimant was diagnosed with major depressive disorder, severe; was assigned a GAF score of 51; and was recommended to undergo a psychiatric evaluation. Id. at 925-26.[7]

### E. Kendall Regional Medical Center

On April 14, 2013, Claimant underwent a cardiac catheterization, which noted non-obstructive coronary artery disorder and reduced ejection fraction ("EF") of 35%. Id. at 950. On the same date, a Doppler test revealed an EF of 50 to 55%. Id. at 978.  On April 15, 2013, Claimant underwent a Computer Tomography ("CT") scan of his chest, which showed a 44% EF. Id. at 975.

### F. Heartwell

On September 12, 2014, Claimant visited Heartwell for a follow-up visit. Id. at 1064-66. Doctors noted that Claimant's blood pressure was controlled; that he had no chest pain; and that

---

[7] A GAF score of 51-60 indicate "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning."  DSM-III-R Axis V: Global Assessment of Functioning Scale.

his cardiac artery disorder was stable. Id. at 1064-65. On October 24, 2014, doctors noted that Claimant's hypertension was benign and his sleep apnea condition was stable. Id. at 1105. In July, September, and October of 2014, upon physical examination, Claimant's gait was normal and he was able to exercise. Id. at 1105, 1110, 1115.

### G.  Reuven Bromberg, M.D. ("Dr. Bromberg")

Dr. Bromberg treated Claimant for rheumatoid arthritis and fibromyalgia. Id. at 1048-52. On August 11, 2014, Dr. Bromberg noted that Claimant continued to improve with Humira. Id. at 1048. Claimant reported having 5 minutes of stiffness in his hands and knees, but that he was able to continue all his activities. Id. Upon physical examination, the swelling in Claimant's proximal interphalangeal joints, metacarpophalangeal joints, wrists, knees, and ankles had resolved; his musculoskeletal strength was 5/5; there were no gross sensory or motor deficits; and Claimant ambulated with a limp. Id. at 1049.

### H.  Mario Mangas, M.D. ("Dr. Mangas")

On September 10, 2014, Claimant visited Dr. Mangas for dyspnea and a consultation for sleep apnea. Id. at 1053. Dr. Mangas noted that Claimant's dyspnea had fluctuated and episodes occurred frequently, and that his symptoms were moderately severe. Id. Dr. Mangas also noted that Claimant experienced depression, difficulty with concentration, gasping during sleep, insomnia, and poor or worsening memory. Id. A baseline sleep study was conducted on October 10, 2014, which revealed insomnia with sleep apnea, and a titration study was recommended. Id. at 1059.

### II.  State Agency Medical Determiners

On February 27, 2013, state agency single decision maker Keith Lackey ("SDM Lackey") reported that Claimant could occasionally lift and/or carry up to 20 pounds; frequently

lift and/or carry up to 10 pounds; and stand and/or walk and sit each for about 6 hours in an 8-hour workday. Id. at 116. On May 20, 2013, state agency determiner Harry Beecham, M.D. ("Dr. Beecham") adopted SDM Lackey's findings. Id. at 132-34.

## RELEVANT HEARING TESTIMONY

A hearing was held on July 7, 2015 before ALJ Reynolds, at which Claimant, ME Alexander, and VE Fidanza testified. TR. 50-89.

### I.     Claimant

Claimant testified that he last worked in 2012, when he was self-employed as a driver. Id. at 58. Claimant also identified his past work as a gardener, pest control worker, merchandise stocker, laundry folder, maintenance worker, and parking ticket taker. Id. at 59-60.

Claimant testified that he forgot things frequently; that he was not able to keep up with a routine; and that he experienced pain in his hands and legs. Id. at 62. Claimant stated that, since six months before when he experienced changes with depression and his marriage, he had spent a typical day laying down or sitting in a chair. Id. at 62-63. Claimant also stated that he experienced problems sleeping; that his medication did not help with his sleep; and that he heard voices. Id. at 63. Claimant testified that he could stand for about 10 minutes at a time, but did not have problems sitting down. Id. at 64. Claimant stated that he was able to concentrate for "given moments" but got lost when reading and was not able to keep up with conversation well. Id. at 65.

Regarding his treatment, Claimant testified that he started treatment with a psychiatrist over three years before. Id. at 61. Claimant stated that he was taking about eight to nine medications, including Cymbalta, Metroprolol, Lisinopril, and Humira; and that the medication helped him enough to keep him stable. Id. at 62. Claimant also testified that he had been using a

walker for about a year, which was prescribed to him by Dr. Judy Valencia because his knees were getting swollen a lot. Id. at 64.  Claimant stated that his doctors were not able to do a hernia repair. Id. at 67.

## II.    ME Alexander

ME Alexander identified Claimant's impairments as coronary artery disease, rheumatoid arthritis, fibromyalgia, ventral umbilical hernia, and obstructive sleep apnea, and testified that none of these impairments met or equaled the listing of impairments. Id. at 68-69, 71. Regarding Claimant's coronary artery disease, ME Alexander discussed Claimant's various EF rates and opined that Claimant had some degree of cardiomyopathy that limited his activity to light sedentary work, and in combination with his ventral hernia, Claimant had limited ability to lift and carry. Id. at 72-73.

ME Alexander also opined that the medical evidence of record did not support the need for Claimant's use of a walker because he did not find target evaluations for weight bearing joints in the record. Id. at 73. As to Claimant's functional limitations, ME Alexander opined that Claimant could lift or carry 10 pounds occasionally and 5 pounds frequently; walk and stand each for 20 minutes at a time and 4 hours each during an 8-hour work day; and sit without limitation, with an option to sit or stand at one workstation. Id. at 75-76. As to postural limitations, ME Alexander testified that Claimant should not be required to climb ropes, ladders, or scaffolds; but that he could occasionally navigate stairs and ramps, balance, bend, stoop, crouch, kneel, and crawl; and that he had no limitations as to manipulation, vision, and communication. Id. at 76. ME Alexander also testified that Claimant should not be exposed to unprotected heights, and that he should not have concentrated exposure to working around heavy machinery with rapid moving parts. Id.

### III.   VE Fidanza

VE Fidanza classified Claimant's prior work as follows:

- Van driver, DOT #913.663-018,[8] with an exertional level of medium[9] and an SVP of 3;[10]
- Security guard, DOT #372.667-034, with an exertional level of light[11] and an SVP of 3;
- Gardener, DOT #408.684-010, with an exertional level of heavy[12] physical demand and an SVP of 4;[13]
- Pest control, DOT #383.684-010, with an exertional level of medium and an SVP of 4;
- Stock clerk, DOT #299.367-014, with an exertional level of heavy and an SVP of 4;
- Janitor, DOT #382.664-010, with an exertional level of medium and an SVP of 3;
- Parking lot attendant, DOT #915.473-010, with an exertional level of light and an SVP of 2.[14]

Id. at 79.

VE Fidanza testified that a hypothetical individual with the same age, education, work history, and RFC as Claimant could perform the following representative jobs:

---

[8] DOT is the acronym for the Dictionary of Occupational Titles, which was created by the Employment and Training Administration and groups jobs based on their similarities, and defines the structure and content of all listed occupations.  See http://www.oalj.dol.gov/libdot.htm (Dictionary of Occupational Titles Fourth Edition, Revised 1991).

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

[10] SVP is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See Dictionary of Occupational Titles App. C (4th ed., rev. 1991), http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.
An SVP of 3 means preparation for the job should extend "[o]ver 1 month up to and including 3 months." Id.

[11] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

[12] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d) and 416.967(d).

[13] As SVP of 4 means that preparation for the job should extend "[o]ver 3 months up to and including 6 months." See Dictionary of Occupational Titles, App. C.

[14] An SVP of 2 means that preparation for the job should extend "beyond short demonstration up to and including 1 month." Id.

> ➤ Order clerk, food and beverage, DOT #209.567-014, sedentary, with an SVP of 2 and 100,000 jobs nationally;

> ➤ Charge-account clerk, DOT #205.367-014, sedentary, with an SVP of 2 and 40,000 jobs nationally;

> ➤ Call-out operator, DOT #237.367-014, sedentary, with an SVP of 2 and 42,000 jobs nationally.

Id. at 80-83.

## STANDARD OF REVIEW

A federal court's "review of a social security case is demarcated by a deferential reconsideration of the findings of fact and exacting examination of the conclusions of law." Williams v. Astrue, 416 F. App'x 861, 862 (11th Cir. 2011).  Thus,

> [t]he Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Kieser v. Barnhart, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002) (citations omitted).  However, the Commissioner's "conclusions of law, including applicable review standards, are not presumed valid." Williams, 416 F. App'x at 862.

## REGULATORY FRAMEWORK: THE FIVE-STEP SEQUENTIAL PROCESS

The Social Security Regulations outline a five-step "sequential" evaluation process used to determine whether a claimant is disabled.

First, the ALJ must determine whether a claimant is engaged in "substantial gainful activity" (hereafter, "SGA").  If the ALJ finds that the claimant is engaging in SGA, then the ALJ must find that the claimant is not disabled. Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

Cir. 2004). In this case, ALJ Reynolds determined that Claimant was not engaged in SGA since the alleged disability onset date of August 1, 2013, and proceeded to step two. TR. 34.

At the second step, the ALJ must determine if a claimant's impairments are "medically severe." If the ALJ determines that the claimant's impairments are medically severe, then he or she must proceed to the third step. Phillips, 357 F.3d at 1237. In this case, ALJ Reynolds found that Claimant suffered from severe impairments of history of CHF; coronary artery disease and/or cardiomyopathy; hypertension; osteoarthritis; rheumatoid arthritis and/or fibromyalgia; and depressive disorder. TR. 34. ALJ Reynolds then proceeded to step three. Id. at 36.

At step three, the ALJ must determine if a claimant's impairment(s) "meet or equal" any of the listed impairments in the regulations. Phillips, 357 F.3d at 1238. If so, the ALJ must find the claimant disabled; if not, then the ALJ should proceed to step four. Id. Here, ALJ Reynolds determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. TR. 36. Therefore, ALJ Reynolds proceeded to step four. Id. at 37.

Step four is a two-pronged process, which first requires the determination of a claimant's RFC and then, based on that RFC, a determination of whether the claimant can return to any "past relevant work." Phillips, 357 F.3d at 1238. As to the first prong, ALJ Reynolds determined that Claimant had the RFC:

> [T]o perform sedentary work as defined in 20 C.F.R. §§ 404.1567[(a)] and 416.967[(a)], in that in an 8-hour workday, the claimant had no limitations with sitting. He could lift and carry 10 pounds occasionally and 5 pounds frequently. He could walk 20 minutes at a time, and stand 20 minutes at a time, or shift positions (i.e. get up and walk around in the workspace). Standing and walking is limited to a total of 4 hours in an 8-hour workday. He should not climb ropes, ladders, or scaffolds. He could occasionally climb ramps and stairs. He could occasionally balance, bend, stoop, kneel, crouch and crawl. He had no manipulative, visual or communicative limitations. Environmentally, the claimant should avoid working at unprotected heights and should avoid

concentrated exposure to dangerous moving machinery or moving mechanical parts.

Mentally, the claimant was able to understand, remember, and carry out short, simple instructions. He was able to sustain attention and concentration for 2-hour periods at a time and for 8-hours in the workday on short, simple instructions. He could use judgment in making work decisions related to short, simple instructions. He was able to respond appropriately to supervision, co-workers, and usual work situations. He requires occupations with set routines and procedures, and few changes during the workday. He could interact appropriately with the public, and could respond appropriately to work pressures in a usual unskilled work setting. He could maintain regular attendance and be punctual within customary tolerances. He could perform activities within a schedule.

TR. 37. Based on Claimant's RFC, ALJ Reynolds moved to prong two of step four and concluded that Claimant was unable to perform any of his past relevant work. Id. at 41. ALJ Reynolds then proceeded to the fifth and final step. Id.

Step five requires the ALJ to determine whether the claimant is able to do any work considering the claimant's age, education, work experience, and RFC. Phillips, 357 F.3d at 1239-40. ALJ Reynolds determined that, given Claimant's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy which Claimant could perform. TR. 42. Therefore, ALJ Reynolds concluded that Claimant was not under a disability, as defined in the Social Security Act, from August 1, 2013 through the date of the Unfavorable Decision. Id. at 43.

## DISCUSSION

As noted above, Claimant contends that ALJ Reynolds' findings with regard to his mental RFC were not supported by substantial evidence. Specifically, Claimant argues that:

I.      ALJ Reynolds failed to fully and fairly develop the medical record of evidence; and

II.     ALJ Reynolds erred by assigning little weight to the opinions of ARNP Fujita and Dr. Georgescu.

The undersigned finds merit in both arguments.

I.    **Whether ALJ Reynolds failed to fully and fairly develop the medical evidence of record**

"[T]he ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). However, this obligation does not relieve the claimant of her burden of proving that she is disabled, Thompson v. Astrue, No. 09-20486-CV, 2010 WL 1796885, at *3 (S.D. Fla. Apr. 30, 2010), or the accompanying responsibility of producing evidence in support of her claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). "[T]he duty to develop a full and fair record merely requires the [ALJ] to develop the [claimant's] medical history for the twelve months preceding the filing of the disability application." Ludden v. Astrue, No. 808-CV-1704-T-30TGW, 2009 WL 4891838, at *3 (M.D. Fla. Dec. 15, 2009) (citing Ellison, 335 F.3d at 1276). Eleventh Circuit has held that an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

In assessing Claimant's mental RFC, ALJ Reynolds assigned "little weight" to ARNP Fujita and Dr. Georgescu's Medical Source Statement. Id. at 41. ALJ Reynolds stated that:

> The psychiatric treatment notes show that the claimant first sought medication management for depression on May 28, 2013, but rejected psychotherapy or case management services. [TR. 927].   He underwent a psychiatric evaluation on August 2, 2013 and was assessed with schizoaffective disorder bipolar type. [TR. 1090].   He was seen every one or two months for medication management only. Also, the only psychiatric treatment notes of record are for the initial evaluation and evaluation of May 13, 2015—which is hardly legible.  [TR. 916-30, 1082-91].  However, other treating source notes document that the claimant was better with treatment.  ([TR. 988, 991, 1014, 1036] - claimant reported to "feel fine"; [TR. 983] – "now better mood . . . psychiatrist increased dosage of medication[."]) Moreover, on April 7, 2015, the claimant reported that he was no longer taking antidepressant medication, did not take antipsychotic medication, and was stable on Clonazepam. [TR. 1139].

Id. at 41.

Claimant argues that ALJ Reynolds failed to fully and fairly develop the record given her assessment of little weight to the only mental opinion evidence of record. See Claimant's Motion for Summary Judgment [D.E. 10-11]. Claimant also challenges ALJ Reynolds' development of the record by arguing that she failed to consider the May 28, 2013 biopsychosocial assessment and the May 13, 2015 psychiatric evaluation. Id. at 7-8. ALJ Reynolds found that these evaluations, which she explained were the "only psychiatric treatment notes of record," were "hardly legible." TR. 41. To the extent ALJ Reynolds found them illegible, these treatment notes were not fully developed as part of the record. See Eubanks v. Comm'r of Soc. Sec., No. 6:16-CV-437-ORL-DCI, 2017 WL 4050162, at *4 (M.D. Fla. Sept. 13, 2017) ("the illegibility of important evidentiary material can warrant a remand for clarification and supplementation.") (citing Miller v. Heckler, 756 F.2d 679, 680-81 (8th Cir. 1985); Brissette v. Heckler, 730 F.2d 548, 550 (8th Cir. 1984); Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975)).

Additionally, the remaining treatment notes that ALJ Reynolds discussed in assessing Claimant's mental RFC are from his treatment for physical impairments, TR. 983, 988, 991, 1014, 1036, 1139, and there is no mental opinion evidence of record other than the Medical Source Statement, which ALJ Reynolds discounted. Because the record does not appear to contain sufficient evidence for ALJ Reynolds to have made an informed decision regarding Claimant's mental RFC, the undersigned recommends that the case be remanded to the Commissioner to fully and fairly develop the medical evidence of record as to Claimant's mental impairments. See Graham, 129 F.3d at 1422; Ingram, 496 F.3d at 1269; Eubanks, 2017 WL 4050162, at *4, 6 ("Because the Court is not capable of meaningfully reviewing the ALJ's

decision given the illegibility of the treatment notes of Claimant's only treating physician, this matter must be remanded for further proceedings.").

## II.     Whether ALJ Reynolds improperly assigned little weight to the opinions of ARNP Fujita and Dr. Georgescu

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An ALJ is "required to state with particularity the weight [given to] the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

"The opinion of a treating physician . . . must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Phillips, 357 F.3d at 1240 (citation and quotation marks omitted). The Eleventh Circuit has held that "good cause" exists where the: (1) treating physician's opinion was "not bolstered by the evidence;" (2) "evidence supported a contrary finding;" or (3) the treating physician's opinion was "conclusory or inconsistent with their own medical records." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "When the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error."

Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012) (citing Moore, 405 F.3d at 1212).

As noted above, ALJ Reynolds assigned "little weight" to ARNP Fujita and Dr. Georgescu's Medical Source Statement that Claimant had "'poor' or no ability to perform any work activities." Id. at 41. ALJ Reynolds explained that the Medical Source Statement was "inconsistent with the contemporaneous treatment notes, which document a history of depressive disorder but improvement with treatment." Id. Claimant argues ALJ Reynolds erred in assigning little weight to the Medical Source Statement because ALJ Reynolds did not provide good cause for discounting the opinion. See Claimant's Motion for Summary Judgment [D.E. 20 at 7]. Because ALJ Reynolds assessed the weight of the Medical Source Statement based in part on "hardly legible" treatment notes and a record that was not fully and fairly developed, in the course of the remand, ALJ Reynolds should re-assess the weight given to the Medical Source Statement. See Lewis, 125 F.3d at 1440; Weekley, 486 F. App'x at 808.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Claimant's Motion for Summary Judgment [D.E. 20] be GRANTED, the Commissioner's Motion for Summary Judgment [D.E. 21] be DENIED, and the Commissioner's decision be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Robert N. Scola, Jr., United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp.

v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 8th day of May, 2018.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Robert N. Scola, Jr.
       Counsel of Record